STUCKEY v. THE ATLANTIC COAST LINE R. R. CO.

1. NEW TRIAL—LORD CAMPBELL'S ACT.—A Circuit Judge may grant a new trial *nisi,* under Lord Campbell's Act, where he thinks the jury has given excessive damages.

2. IBID.—Such power is not limited to cases in which jury acted from improper motives.

3. IBID.—DISCRETION.—Reduction of verdict for damages by two-thirds, in order for new trial *nisi,* sustained by this Court because it cannot disturb the discretion of Circuit Judge in such matters.

Before KLUGH, J., Sumter, October term, 1899. Affirmed.

Action by A. Brooks Stuckey, administrator of Sarah P. Dixon, against The Atlantic Coast Line Railroad Co. of South Carolina. Plaintiff appeals.

*Messrs. Frasers & Cooper* and *Thos. S. Moorman,* for appellant, cite: *As to right of this Court to review order granting new trial:* 23 S. C., 231; 19 S. C., 580. *As to power of Judge to change amount of verdict:* 1 McC., 183; 1 Hill, 55; 2 Hill Ch., 12; 56 S. C., 80; 12 U. S. App., 574; 1 U. S. App., 267; 52 L. J. G. B., 479; 2 N. J. L., 24. *As to new trial:* Rev. Stat., 2245; 3 Hill, 282; Chev. L., 153, 17; 1 Spear., 238; Harp., 57; 2 Bail., 577; 29 S. C., 381.

*Messrs. J. T. Barron* and *Purdy & Reynolds,* contra, cite: *As to power of Court to interfere with verdict:* Rev. Stat., 2245; Code, 286, sub. 4; 12 S. C., 46; 47 S. C., 375; 21 S. C., 342; 53 S. C., 210; 37 S. C., 56. *As to excessive damages:* 29 S. C., 303; 47 S. C., 375. *As to the construction of the statute:* 37 S. C., 395, 551; 39 S. C., 5.

April 16, 1900. The opinion of the Court was delivered by

MR. JUSTICE POPE. The statement of facts which appears in the argument of appellant is as follows: "On October 1st, 1898, Mrs. Sarah P. Dixon, the deceased, entered the

respondent's cars at Sumter to go to a station called Bell's Crossing, in the upper part of Sumter County, and purchased a ticket and paid the usual fare demanded for such transportation. When the train reached Bishopville, a station on said road between Sumter and Bell's Crossing, the train was divided; the portion to which the engine was attached was run off on to the side track, and the portion to which the passenger coach was attached was left standing on the main line. The passenger coach was left there for some time, *i. e.,* about an hour. There were no passengers in the coach except Mrs. Dixon, Mrs. Stuckey, her daughter, and little Mary, the two-year old child of Mrs. Stuckey. The long wait made it necessary for Mrs. Dixon to go to the water closet, a place provided by law for the convenience and necessities of the passengers. Mrs. Stuckey went with her mother to and from the closet, and just as they reached the seat on which they had been sitting, and while Mrs. Dixon was holding on to the backs of the seats with both hands and Mrs. Stuckey was holding to her mother with one hand, and the back of the seat in front with the other hand, the engine was, without any warning whatever, run back on the main line and against the portion of the train to which the passenger coach was attached with great violence—so great, indeed, was the violence of the collision that the noise was heard two hundred yards away and caused remark. The force of the blow was so great that Mrs. Dixon was knocked down on the floor, which produced serious bruises and wounds on her head, face, neck, shoulder and side; Mrs. Stuckey was knocked down on her mother, with one knee fastened under a seat, and the little child was knocked and fastened under another seat. Mrs. Dixon was thrown into a nervous jerking by her injuries and fright, from which she was only revived by the prompt administration of brandy which Mrs. Stuckey happened to have with her. The train moved off at once, and in a few minutes arrived at Bell's Crossing. A few minutes after getting to Bell's Crossing, Mrs. Dixon was taken quite sick and became very ill that night, and the next

day they thought she would die.    The family were daily
expecting her death for five weeks, when she died.    The ap-
pellant was appointed administrator, and brought this action
for the negligent killing of Mrs. Dixon.    There was no dis-
pute about the fact that Mrs. Dixon had very little property,
but that she was a woman of the highest Christian character,
was modest, refined, and was all that is comprehended in the
expression, a kind mother and wise counsellor.    The action
was tried before his Honor, Judge Klugh, and a jury.    The
jury rendered a verdict of $15,000 for the plaintiff, appel-
lant."    A motion was made for a new trial, and on that mo-
tion the order appealed from was made as follows: "It is
ordered, that the motion for a new trial made herein by the
defendant's counsel be and the same is hereby refused, and a
motion having been made by defendant's counsel to grant a
new trial *nisi,* upon the ground that the verdict is excessive.
It is further ordered, that unless the plaintiff reduce the ver-
dict by remitting on the record $10,000 of the verdict, leav-
ing the same for $5,000, within ten days, that a new trial be
and the same is hereby granted, if the plaintiff fails in the
aforesaid time to remit $10,000 of the amount of the said
verdict, on the record within the time aforesaid."

The plaintiff refused to enter the *remittitur* contemplated
by Judge Klugh's order.    On the contrary, he appealed
therefrom on six grounds, which we will not set out in terms,
as the appellant has agreed in his argument that such excep-
tions raise but three questions.    "There are various excep-
tions, but they raise substantially but three questions: 1.
Has the Judge the right, under this statute, to interfere in
any way with the verdict?    2. If he has such right, is not
the right based upon the finding of some improper motive
manifested by the jury, which affects the verdict as a whole
and not in part?    3. Is not a two-thirds reduction an exces-
sive reduction?"

Let us examine these positions in their order.    In *Reed* v.
*Railroad Company,* 37 S. C., 51, this Court said: "There
can be no question that, under the laws of this State, as bor-

rowed from the common law, as to *torts,* the right of action
relating thereto died with the person injured. *Actio per-
sonalis moritur cum persona.* *Chaplin* v. *Barrett,
administrator,* 12 Rich., 284; *Huff* v. *Watkins,* 20 S.
C., 480. But in cases like the present, namely, when
it is alleged that a person whose services are owed to certain
persons as a comfort or support to them, is killed while in the
service of another by the wrongful act of the employer, the
legislation of this State has supplemented the provisions of
the common law, and given a right of action to the adminis-
trator of the deceased in behalf of certain kindred of the de-
ceased—12 Statutes at Large, 825. The remedy supplied by
this legislation is evidently intended to be the adoption in this
State of what is known as 'Lord Campbell's Act,' whose title
was 'An act for compensating the families of persons killed
by accident.' " This remedy is now embodied in sections
2315 (2183), 2316 (2184), 2317 (2185), 2318 (2186), of
volume 1, Revised Statutes of South Carolina, 1893. It will
not be necessary, we think, to embody the text of these sec-
tions of our statutes in this opinion, for they have so often
been quoted in our reports that their absence here will not
militate against a thorough understanding of the issues here
raised. The first exception raises the question as to the
power of the trial Judge, under the provisions of the Lord
Campbell's Act, to interfere with the verdict of the jury.
Appellant relies to support his contention upon this language
in section 2316 (2184) : "* * * and in every such action
the jury may give such damages as they may think propor-
tioned to the injury resulting from such death to the parties,
respectively, for whom and for whose benefit such action
shall be brought, and the amount so recovered shall be
divided among the before mentioned parties [*the wife, hus-
band, parent and children* of the person whose death shall
have been so caused], in such shares as they would have been
entitled to if the deceased had died intestate, and the amount
recovered had been personal assets of his or her estate." It
is admitted that there is no expressed intention in the law

here considered to shut off a Judge exercising such rights and privileges as the law provides for him in the control of the juries, unless this language just quoted so operates.  The appellant would have us accept the conclusion that this extension of the right to recover for a tort, which always belonged to a person, himself or herself, to an administrator for the benefit of certain of his or her relatives in case of his death, places the relations upon whom this boon is conferred *outside,* so to speak, all rules of law which govern other litigants in our Courts.  But is the proposition sound?  Does the Lord Campbell's Act name the Court which is to try the action or the machinery which is to provide a jury for such trial?  No such special provisions appear in the act.  Unquestionably, the Court, which is sufficient for every other litigant, the general provisions of our laws supply to these litigants.  Moreover, in the very sections of our. Revised Statutes embodying the Lord Campbell's Act, it is provided—see section 2317 (2185)—that the personal representative, who brings this action, shall pay costs in case of a "nonsuit"—Circuit Judges grant nonsuits.  To grant a nonsuit, testimony must be absent on some material part of the issues submitted to the jury.  So that, from this fact, it would seem that such administrators were not, in the Lord Campbell's Act, placed outside of the law which gives to trial Judges their power over business transacted in the Courts over which they preside.  We cannot agree that there is anything in this law which places this class of cases outside of the general law which controls Circuit Judges.  If there is nothing in the act itself to deny the Circuit Judge the power to grant a new trial *nisi,* is such power confided to him under the general law?  We think so.  Section 2245 of our Revised Statutes provides: "Circuit Courts shall have power to grant new trials in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the Courts of law in this State * * *" *Warren* v. *Lagrone,* 12 S. C., 46, was a well considered case on the following presentation of the power of a Circuit Judge to grant a new trial, a new trial

*nisi,* as will appear from the following order which was made the basis of the appeal in that case: "1. It is ordered, that the motion in arrest of judgment and all the grounds for new trial are overruled, except the ground of excessive damages. 2. That the ground as to excessive damages be sustained. 3. That said motion for a new trial be and the same is hereby granted, unless the plaintiff within thirty days from the date hereof remit on the record the sum of $2,975.82 of the verdict, as of the date thereof, in which case said motion is dismissed without costs."

From this order there was an appeal, and Mr. Justice Haskell, in delivering the opinion of the Court, said: "It is well settled that 'this Court has no power to review or correct the findings of fact in a trial by jury.' Const., art. IV., sec. 4. But it is provided that 'the Judge who tries the cause may, in his discretion, entertain a motion to be made on his minutes to set aside a verdict and grant a new trial upon exceptions, or for *insufficient evidence,* or for *excessive damages.*' Gen. Stat., 636, sec. 288; *vide,* also, act of 1868, Gen. Stat., 497, sec. 4. From the decision of the Circuit Judge on such motion, based upon error in fact, as for insufficient evidence or for excessive damages, there is no appeal. The Circuit Court, therefore, in such respect, is a Court of final resort, and, except where specially directed by constitutional or statutory provisions, is to be governed in its proceedings by the principles of law and the rules of practice which were of force, and applicable to courts in the exercise of similar power prior to the adoption of the Constitution of 1868. The practice of the Court of Appeals prior to 1868, before which Court such motions were then heard, is too well settled to require more than a mere reference to the volumes of the reports of the adjudicated cases. In the case of *Laney* v. *Bradford,* 4 Rich. L., 2, the Court, per Wardlaw, J., says: 'These considerations induce the Court to impose, upon the grant of a new trial in this case, extraordinary terms required by an extraordinary conjuncture of circumstances. The discretion of the Court in imposing conditions upon the grant of a new

trial may always be exercised according to the exigency of the case.' A new trial was thereupon granted *nisi.* In *Parker* v. *Walker,* 12 Rich., 138, the Court, per O'Neall, J., says: 'Having thus the means of correcting the verdict and doing justice between the parties, we will pursue that course. A new trial is, therefore, granted, unless the plaintiff shall, within sixty days after notice of this order, enter upon the record, a *remittitur* of so much of the verdict as shall exceed $29.75.' See, also, *Walters et al.* v. *McGirt et al.,* 8 Rich., 287; *Dotterer* v. *Bennett,* 5 Rich., 295; *Guerry* v. *Kerton,* 2 Rich., 507; *Farrand* v. *Bouchell,* Harper, 83. In fact, it requires but a glance at the authorities to show that where the proper limit of the damage was legally ascertainable, it was the common practice to grant the order *nisi.* Graham & Waterman on New Trials, 1162. If the Circuit Judge is empowered to grant a new trial because he considers the damages excessive, it is absolutely necessary to presume that he is able to fix damages which would not be excessive. If the plaintiff sees proper to reduce the verdict that amount, no one can complain—most assuredly, not the defendant." The power to grant a new trial *nisi* was exercised in *Finch* v. *Finch,* 21 S. C., 342; also, *Strother* v. *Railroad,* 47 S. C., 375, and many other cases. We regard the judgment of this Court in the case first cited—*Warren* v. *Lagrone*—as conclusive of this question.

In answer to the second exception, or rather the summation of such exceptions as fall under the second group, we will say, that we do not see that any such limitation has been placed upon the Circuit Judge when he grants a new trial *nisi,* so that it must appear, in order to enable him to do so, that the jury were governed by improper motives, which affects the whole verdict and not in part. The motive of the law-making power of this State, in clothing the Circuit Judges with power to grant new trials, is not limited to cases where improper motives with the jury existed, but for other and wiser purposes was such power given to them. It is true, if the Circuit Judge was made to

see that a jury was governed by improper motives, it would be in his discretion to grant a new trial; but the Circuit Judge relieves the jury, in the case at bar, of any such imputation.

As to the third group, we will say that we do not propose to interfere with the exercise by the Circuit Judge of his wise discretion in weighing the testimony and determining its sufficiency—even if he allows only one-third of a verdict to stand. We can only interfere when he commits error of law. This does not belong to that category, and hence we cannot help the plaintiff in this matter.

This Court, by an order dated the 23d day of January, refused the motion to ascribe error to the Circuit Judge in the order for a new trial *nisi*, and in this opinion we merely cite our reasons for such order already made by us.