CARROLL v. CHARLESTON & SEASHORE R. R. CO.

1. COMMON CARRIER—NEGLIGENCE.—Whether a carrier has exercised the care required of it by the law, is a question for jury to decide upon all the facts and circumstances of the case, and Judge did not here instruct the jury that the liability of the carrier was to be decided by them upon their conception of what is care.

2. NEW TRIALS.—This Court has nothing to do with the reasons assigned by the trial Judge in refusing a new trial, and cannot interfere unless error of law be committed.

Before GAGE, J., Orangeburg, May, 1902.    Affirmed.

Action by Annie B. Carroll against Charleston and Sea-
shore Railroad Co.    From judgment for plaintiff, defendant
appeals.

*Messrs. Mordecai & Gadsden,* for appellant, cite: *Judge
should declare what is negligence:* 41 S. C., 140.    *Court of
appeals will grant relief from orders for new trials nisi where
they do not meet the demands of the case:* 18 Ency P.
& P., 144; 2 Cliff., 82.

*Messrs Mitchell & Smith,* contra, cite: *Party cannot com-
plain of charge too favorable to him:* 50 S. C., 49; 62 S. C.,
380; 63 S. C., 290.    *What facts make negligence is for
jury:* 61 S. C., 563; 30 S. C., 218.    *Whole charge must be
considered:* 47 S. C., 67; 57 S. C., 1, 16; 58 S. C., 94; 59
S. C., 446; 62 S. C., 380; 63 S. C., 370.    *This Court will
not reverse refusal of new trial moved for excessive dam-
ages:* 8 S. C., 180; 11 S. C., 222; 21 S. C., 344; 23 S. C.,
231; 24 S. C., 593; 36 S. C., 587; 51 S. C., 405; 57 S. C.,
289, 401; 59 S. C., 269.

March 24, 1903.    The opinion of the Court was deliv-
ered by

MR. CHIEF JUSTICE POPE.    The action was for damages.
At the trial at Orangeburg, at May term of Court, 1902, the
verdict of the jury was in favor of plaintiff.    On motion of
defendant, the Circuit Judge required the plaintiff to remit
$3,000 of her verdict.    This was done.    Defendant then
appealed to this Court on four grounds.    These grounds
virtually raise two questions.    The questions are: Was the
Circuit Judge in error in his charge to the jury?    Did the
Circuit Judge err in only granting a new tria *nisi?*    Before
going into an examination of these questions, it may be as
well to give a brief recital of the salient facts underlying
this contention.    The plaintiff, in the year 1898 (in July),

at the request of defendant, with a number of others residing in the city of Charleston, became a passenger on the lines operated by the defendant to the Isle of Palms, where a dance was had. The party embarked at the Isle of Palms for the city of Charleston, traveling to Mount Pleasant, S. C., on the electric railway of the defendant. At Mount Pleasant, the passengers over the wharf of the defendant were to be received on board a small steamer operated by the defendant to the city of Charleston. It was about the hour of 1.30 at night that the party left the electric car of the defendant and started across the wharf to the steamer. When on the wharf the party started to embark on the steamer, but Miss Annie Carroll, while no lights were burning on the said wharf, with no one to guide them, fell into a hole in said wharf, down into the deep water underneath said wharf, where the current was very strong, and was only saved from drowning by the heroic conduct of a Mr. Marshall and Mr. Paine, who plunged into the water in utter darkness and rescued her from death. She claims that she received physical injuries from which she has never recovered, paying to one physician for attention to her some $256, besides having gone north to consult medical authority. Her case was twice tried in the city of Charleston, but mistrials were ordered because of the inability of the juries to agree. Therefore, on application her action was transferred to the county of Orangeburg for trial. At this trial both sides introduced much testimony. The testimony offered by the plaintiff tended to prove her cause of action, while that of defendant tended to show that there were lights burning on the night of the accident, and also that the defendant had the hole in the wharf barricaded so as to prevent any one falling through, and also testimony was offered tending to belittle the injury of plaintiff. On these issues the testimony was submitted to the jury, and after the charge of his Honor, the jury rendered a verdict for plaintiff for $9,000. On defendant's motion, however, the Circuit Judge ordered a new trial, unless plaintiff remitted $3,000 of the verdict,

which was done by her. Judgment was entered for $6,000. Thereupon defendant appealed, as before remarked. We will reproduce just here the exceptions:

"*First.* His Honor erred in charging the jury, 'Whether or not in any· case a party has exercised the degree of care required of them, depends upon all circumstances of the case—depends upon the place, the situation, what was done and what was left undone; and above all, gentlemen, depends upon the jury's conception—for at last it rests with the jury, you see—depends at last upon the jury's conception of what is care and what is the highest degree of care, and depends upon the jury's conception of what was done then and there;' whereas, the degree of care required of a railroad company is fixed by law, and the sole question for the jury to decide was whether the acts performed by the company measured up to that degree of care required by law, and it was improper for the Circuit Judge to leave the legal liability of the company as to the degree of care performed by it to a jury's conception of what is care and what is the highest degree of care.

"*Second.* His Honor erred in charging the jury, 'Whether or not in any case a party has exercised the degree of care required of them, depends upon the circumstances of the case—depends upon the situation, place, what was done and what was left undone; and above all, gentlemen, depends upon the jury's conception—for at last it rests with the jury, you see—depends at last upon the jury's conception of what is care and what is the highest degree of care, and depends upon the jury's conception of what was done then and there;' whereas, the liability of the defendant does not depend upon the jury's conception of what was done then and there, but the jury should have been instructed that whether or not the company was negligent, as alleged, depends upon the testimony introduced before them as to what was done then and there by the company.

"*Third.* His Honor, Judge Gage, having found in his order granting a new trial *nisi*, that there was no testimony

to warrant the exaction of punitive damages, that there was no proof of damage to bone or tissue, and that there was no proof in the case that the plaintiff was permanently injured, should have found, as a matter of law, that the verdict of $9,000 was excessive, and having so found, as a matter of law, have granted the motion of the defendant for a new trial.

"*Fourth.* The Circuit Judge having found in his order granting a new trial that there was no testimony to warrant the exaction of punitive damages, and that there was no proof in the case that the plaintiff was permanently injured, should have found, as a matter of law, that the verdict of $9,000 was excessive, and having so found, it was an abuse of legal discretion vested in the Circuit Judge not to have granted a new trial for excessive damages, instead of simply requiring a reduction of $3,000 in said verdict."

As to the first two exceptions, we may remark that they furnish an apt illustration of the rule of this Court, that it is better to give a construction of the whole charge rather than pass upon extracts from the charge embodied in exceptions. It is but an act of sheer justice to the Judge that his whole charge should be considered. Of course, it was not the purpose of the appellant to seem even to do an injustice to the Circuit Judge, yet that would be the effect in this instance; for when, what the trial Judge did charge the jury is examined, it will readily appear that in the language quoted in the exceptions we are now considering, the Circuit Judge was endeavoring to impress their minds with the solemn truth that, under our Constitution, the jurors are made the judges of the facts. To reach a righteous conclusion, their conceptions as to what the testimony really discloses must necessarily govern them. The language of his charge, in truth, was as follows:

"Now the allegation of the complaint is that the relationship which existed between these two parties, the plaintiff, Miss Carroll, and the defendant, the Seashore Railroad Company, was the relationship of carrier and passenger—that is

to say, that she was a passenger upon its train, and that for a price it undertook to carry her from a point called the Isle of Palms to the city of Charleston, and that the way lay along an electric railway track for a distance until they reached the sea, and then off the railway onto a wharf, and from the wharf on a boat to the city of Charleston. Now the allegation of the complaint is that on this way, to wit: between the time that she left the electric car and the going upon the boat, between those two points, to. wit: upon the wharf, her allegation is that she was injured, and that injury resulted from the wrongful act of the railroad company.

"If you are satisfied, gentlemen, from the testimony, that the relationship between the parties was that of passenger and carrier, then the next inquiry is one of law, and is this: what obligation does the law put upon carriers of passengers for hire? When that relationship is once established, the relationship of passenger and carrier, what obligation does the law cast upon each one of the parties in that relation? As I told you, that is the question of law in the case, and our Courts have held that where that relationship is established, then the law casts upon the person who carries, called the carrier, the highest degree of care with reference to the passenger carried. Now, that is simpple enough; that is the law of the case. Now, what is the fact? The fact for you to determine is whether or not, under the particular circumstances on that day, then and there, the railroad company did exercise towards this lady that degree of care. If it did exercise that degree of care, it has fulfilled the obligation of the law and should go acquitted; if it did not act up to that degree of care, and the jury is to fix that degree of care, then you are prepared to take one step further. But before I go that step, gentlemen, let me stop and ask you how you are to fix the fact whether or not the railroad company have come up to the degree of care prescribed by the law? You are to fix it, gentlemen, with reference to your own conception of duty, and your own conceptions of what is right and proper in any case. Whether or not in any case a party has

exercised the degree of care required of them, depends upon all the circumstances of the case; depends upon the place, the situation, what was done and what was left undone, and above all, gentlemen, depends upon the jury's conception— for at last it rests with the jury, you see—depends at last upon the jury's conception of what is care and what is the highest degree of care, and depends upon the jury's conception of what was done then and there. One man may look at a transaction and say that that transaction is careful; another man may look at it and say that transaction was not careful. Now, the object of the law is that these twelve men, set apart here to try this case, should put together their joint judgment and come to a right conclusion as to whether or not, on the day mentioned here, under all the circumstances detailed before the jury of time, place and circumstance, whether or not the defendant came up to or fell short of the care required of him by the law. I say, if you find it did, that ends the case, and you must find for the defendant. If you find it did not, then you go one step further, and ascertain if the defendant, the railroad company, did fall short of the care required by law, did that lead to, as a natural consequence and to be expected consequence, the transaction here under consideration, to wit: did it lead to the falling of the lady through the hole.

"Now the plaintiff undertakes, gentlemen, as they were bound to do in their complaint, to designate specifically in what particulars the railroad company fell short of its care, and it does so in its complaint. Here is the language of the complaint, and the whole transaction is embraced in this one paragraph: 'That there was no light at all on the wharf, and the plaintiff got out on the wharf from the car in which she was, and walked on the wharf towards the steamboat. That as the plaintiff was walking towards the steamboat, on the wharf, in consequence of the obscurity and the darkness, she fell into a hole or opening that had been left on the wharf wholly unprotected, and with no light to show where it was, and then and there fell and went right through down into the

water.' Now, the complaint specifies, as it was bound to do, in what two particulars the railroad company fell short of its duty. The first is that there was an opening there on the wharf, and that is an issue for you; was there an opening there? And, second, that that opening was unlighted, and that is an issue for you. You have heard the testimony. You are first to decide was there an opening there; you are, secondly, to decide whether the opening ought to have been lighted, and thirdly, you are to decide whether or not it was lightd. The allegation of the complaint is further that the opening was unguarded. You are first to decide whether it was unguarded or not, and you are to decide whether or not it ought to have been guarded, because to leave it unguarded was not a breach of duty, gentlemen, unless in your judgment it ought to have been guarded. So in those two issues, rightly, the light and guarding, there are four issues: First, was the hole lighted? If not, should it have been lighted? Then, was the hole guarded? And, secondly, should it have been guarded? Now, if you find those issues against the railroad company, your next inquiry is, was the defendant injured thereby? That is, did the failure to light the hole, if it was unlighted, did the failure to guard the opening, if it was unguarded, were those two things the cause, the proximate cause—and by proximate cause I mean just what that word implies—did the event which happened, to wit: the falling through the opening, was that the natural and to be expected consequence of the failure to light the hole, if it was unlighted, and to guard the hole, if it was unguarded? If it did, then the plaintiff's injury is said to have resulted from the failure of the railroad company to do what it ought to have done, and she is entitled to damages, unless, gentlemen, unless the defendant establish what they set up in their answer, and what is that? They say this in their answer: 'That this event, to wit: the falling through the hole, was caused, not by their negligence, but by the plaintiff's negligence, in abandoning the regular passageway leading from the car to the ferry boat, along which said passageway all

25—65

the other passengers were proceeding, and in climbing over a pile of lumber which had been placed on the side of the wharf for the express purpose of guarding the public from falling from said wharf into the water.' This is denominated, gentlemen, contributory negligence, and you will apply to the plaintiff this test: that is, did the plaintiff upon that day exercise towards the railroad company ordinary care? Because when an event happens between two persons and one seeks to hold the other accountable for the consequences of that event, the inquiry is, did either party, or did both parties, do what the law required of them? For instance, gentlemen, if two men in buggies collide upon the public highway, one going one way and one the other, and one demands damages at the hands of the other for injury done him, the main inquiry is, what did both parties do, where does the blame rest? And you inquire into the conduct of both men and ascertain who is to blame. Now, the rule of law is that if the event—that is, the falling through the hole, occurred as the result of the negligence of both sides—that is to say, if this party was negligent; and if that party was negligent, and if the negligence of both co-operating and concurring, like two streams running into one, causes the damage—then the law, gentlemen, leaves them where it finds them, and does not stop to apportion how much negligence one was guilty of and how much negligence the other was guilty of. That is the law, and that law is founded upon human experience. And the reason of it is this: Where an event has happened which is the result of wrongful conduct of two parties, it would be idle to stop and ascertain how much of it was caused by the wrongful act of one and how much of it caused by the wrongful act of the other, because human experience teaches us when we enter that field, it is so abstruse that a jury could not ascertain with any reasonable certainty as to how the event occurred, and the law is that the jury shall stop their investigations then and there, whenever they conclude that the event happened by the concurring wrongful act of both parties. Now, how much care was re-

quired of the plaintiff in this transaction? The law is that she was only held to ordinary care. Now, the answer says upon that, that she quit the regular passageway, and that she climbed upon an obstruction around the hole. It sets up two acts of negligence on her part, and in the consideration of these two acts there are really four questions: In the first place, did she quit the regular way? In the second place, if she did quit it, was that an act of negligence on her part? Did she climb upon an obstruction, if there was an obstruction there, and if she did, was that an act of negligence on her part? If you conclude that she did quit the regular way, or did climb upon an obstruction, and if you conclude that that, or either one of them, was an act of negligence on her part which was a proximate cause of her falling into the hole, or one of the proximate causes, then you stop right there and find a verdict for the defendant. But if you conclude either that she did not quit the way, or that she did not climb upon the lumber, or if you conclude she did do that, and yet that that was not an act of negligence on her part, or if it was, that it was not one of the sufficuent and proximate causes of the injury to her, then you disregard the question of contributory negligence and revert to the negligence of the defendant and the defendant alone.

"Now, gentlemen, if you find the issues for the plaintiff, if you find the facts for the plaintiff upon the issues I have submitted to you, then you go one step further, and inquire how much this lady has been damaged. As I told you in the outset she sets down two elements of damage, one of $10,000 for actual damages to her. Now, how do you assess that, gentlemen? You know what actual damages are, and if I should attempt to go into a refined statement of what are the elements which enter into actual damages, I should probably confuse you. The law is, that she is entitled to such damages as she has sustained in her person, and you have heard the testimony and it has become a question for a jury to estimate that damage, to estimate it as best you can from the lights before you, from your knowledge of the human

frame and from the testimony of the parties, and come to
some sort of a conclusion as to how much this lady has been
damaged in her person.    She sets down in the complaint as
among the elements of damage her doctor's bill.    That can
be included, if you find there is a doctor's bill.    And she
sets down among the elements of her damage the pain to her
person.    You can assess that, gentlemen, because one party
has no right to inflict pain upon another party without just
compensation therefor.    Now, you cannot take and measure
pain, like you can a piece of bacon, in a scale, but you must
have some sort of method for measuring it, and for ascer-
taining, first, how much this lady has been damaged in her
person, how much has she suffered, how much has her useful-
ness in life been impaired, and whether or not the damage to
her is permanent, or whether it is temporary.    I know of
only one rule to give you, gentlemen, and that is the rule by
which men ought always to be guided when they come to sit
in judgment upon their fellow-men; that rule is, what is
right under the testimony?    Where does the truth lie?    And
that is the rule, gentlemen, and what you are set here to
ascertain.

"Now, a second element of damage, as I stated to you in
the beginning, was as to whether or not this railroad com-
pany should be punished $5,000 for punitive damages.
And that means this, gentlemen: that where a corporation,
or any other defendant, is charged with doing an act, and is
charged with doing it wilfully—that is, where the act pro-
ceeds out of the will and heart, where that was done which
was expected to be done—that is called a wilful act, and it is
colored by the condition of the heart which prompts the party
when it is done; and the law says that when the act proceeds
out of a wilful heart that the jury may award such damages
as will punish the party guilty of the act.    Or, gentlemen, if
the act is not wilful, if it is done out of a heart which indi-
cates an utter disregard of law, which in law amounts to
wilfulness, because a party may either intend a specific act or

be utterly and totally regardless of their conduct, and in that sort of a case it amounts to wilfulness.

"Now, the question for you in this case is, because it is a matter to be proved like any other matter, are you satisfied from the testimony that what was done on this occasion proceeded from a wilfulness on the part of the railroad company, or from such a disregard of law as amounted to wilfulness.

"Now, when you come to find your verdict, the law does not require you to separate the amount, and say we find so much for actual damages, and so much for wilful damages, but allows you to lump them by saying, we find so much damages for the plaintiff.

"I don't know that it is necessary for me to say anything further to you, gentlemen, except to pass upon the requests to charge made by the plaintiff, and those requests are five in number."

It should be stated that the appellant made no requests to charge. It seems to us that the charge itself is the best answer to appellant's criticism of it. There was no failure of the Circuit Judge when he charged that the appellant owed to the passengers the greatest care to save them from harm, nor did he fail to state the law when he declared that passengers were held only to the exercise of ordinary care. When the Judge's charge is examined it will be seen that the jury could not err as to these points, if they adhered to the duties laid down for their observance. As to these two exceptions, they must be overruled.

We will examine the third and fourth exceptions, relating as they do to alleged errors of the Circuit Judge in not ordering absolutely a new trial, but for ordering a new trial, *nisi.* · This matter of new trials and the control of the same by the Circuit Judge has been considered by this Court in many cases, notably that of *Stuckey* v. *R. R. Co.,* 57 S. C., 400 and 401, 35 S. E., 550, where a review of the authorities was made. We are not concerned in such cases by the reason assigned by the Circuit Judge for

ordering new trials, *nisi,* so long as he adheres to the testimony; it is only when he errs as to points of law that we can supervise his ruling. There was no error of law here pointed out. We, therefore, cannot interfere. It was high time that these trials should end. These exceptions are overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.